IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| INHANCE TECHNOLOGIES LLC,<br>22208 North Berwick Drive,<br>Houston, TX 77095,<br><br>      *Plaintiff*,<br><br>      v.<br><br>LEE ZELDIN, in his official capacity as<br>ADMINISTRATOR, UNITED STATES<br>ENVIRONMENTAL PROTECTION<br>AGENCY,<br>1200 Pennsylvania Avenue N.W.,<br>Washington, D.C., 20460,<br><br>      *Defendant*. | Civil Action No. |

## **COMPLAINT**

Plaintiff Inhance Technologies LLC (Inhance) brings this Complaint against Defendant Lee Zeldin, in his official capacity as Administrator of the United States Environmental Protection Agency (EPA) and alleges as follows:

### **PRELIMINARY STATEMENT**

1. The Freedom of Information Act (FOIA) is the product of the careful balance Congress struck between the public's right to know and private persons and businesses' interests in confidentiality. The law promotes transparency in government by providing an avenue for interested persons to gain access to certain federal records, data, and information.

2. Recognizing that not all federal records ought to be disclosed, Congress fashioned nine FOIA exemptions. When disclosure would harm an interest protected by one of these exemptions, a federal agency is not to release the information. One of those exemptions protects from disclosure any trade secrets or commercial or financial information that is confidential or

1

privileged. 5 U.S.C. § 552(b)(4). In keeping with its placement in the statutory sequence, the exemption is commonly known as Exemption 4.

3. The Toxic Substances Control Act (TSCA) has its own FOIA provisions. With a few narrow exceptions, TSCA largely prohibits disclosure of information that is exempt from disclosure under FOIA Exemption 4. *See* 15 U.S.C. § 2613(a). Relevant here, the person submitting the information must additionally assert that disclosure of the information would likely cause competitive harm. *See id.* § 2613(c)(1)(B)(iii). This burden is not onerous: Information is entitled to protection as long as there is a "reasonable basis to conclude" that substantial competitive harm is "likely." *Id.*; *see also* 40 C.F.R. §§ 703.7(f)(4), 703.8(e).

4. Plaintiff Inhance is a small, Texas-based company that serves a critically important function in the national supply chain. Inhance fluorinates plastic containers. Fluorinating plastic imparts what is known as "barrier protection" to the container, keeping volatile or dangerous substances inside and keeping the outside environment out. Inhance fluorinates more than one hundred million containers a year, and industries like healthcare, crop protection, and outdoor power equipment all depend on Inhance's fluorination process to allow their products to be safely stored and marketed.

5. Inhance has been fluorinating containers for more than four decades. Several years ago, Inhance and EPA learned that the fluorination process has the potential to unintentionally create minute amounts of long-chain per- and polyfluoroalkyl substances, or PFAS, in the articles (i.e., containers) Inhance treats. That discovery kicked off a spate of EPA regulatory and litigation activity centered on Inhance—at times at the behest of two environmental nongovernmental organizations: Public Employees for Environmental Responsibility (PEER) and the Center for Environmental Health (CEH).

6. In the midst of these regulatory and litigation actions, EPA initiated an enforcement action against Inhance under Section 5 of TSCA. As part of EPA's information-gathering process, as a prelude to the filing of its enforcement action, Inhance was required to disclose a treasure trove of Inhance's confidential business information to the agency. On judicial review, the Fifth Circuit found that EPA lacked the statutory authority to pursue Inhance under Section 5 because its fluorination process did not constitute a "new use."

7. Fast forward to the present dispute. In response to a FOIA request brought by PEER and CEH, EPA rejected Inhance's request to withhold highly confidential test data generated through its proprietary research and development program, which Inhance had submitted (under protest) to EPA during the Section 5 administrative process. This research and development program, which was funded entirely by Inhance, resulted in a highly successful enhancement of Inhance's fluorination process that reduces potential PFAS formation, and such process enhancements were subsequently deployed to each of Inhance's treatment facilities. Because public disclosure of Inhance's confidential information would work a significant competitive harm to Inhance, Inhance brings this action to restrain release of that information and to enforce its rights under the TSCA FOIA provisions and FOIA Exemption 4.

## PARTIES

8. Plaintiff Inhance is a limited liability company organized in Delaware with its principal place of business at 22208 North Berwick Drive, Houston, TX 77095.

9. Defendant Lee Zeldin is the Administrator of EPA and is responsible for administering and enforcing TSCA and fulfilling EPA's obligations under FOIA. Defendant Zeldin maintains an office at 1200 Pennsylvania Avenue N.W., Washington, D.C., 20460.

**JURISDICTION AND VENUE**

10. This Court has jurisdiction under the following statutes:

   a. 28 U.S.C. § 1331 because this civil action arises under the laws of the United States;

   b. 28 U.S.C. § 1346(a)(2) because Inhance asserts claims against the United States;

   c. 28 U.S.C. § 1361 because this is an action to compel officers of the United States to perform their duties;

   d. 28 U.S.C. §§ 2201–02 because this is an actual, justiciable controversy as to which Inhance requires a declaration of its rights by this Court and injunctive relief to prohibit Defendants from violating laws and regulations; and

   e. 15 U.S.C. § 2613(g)(2)(D)(i) because this is an action to restrain disclosure of confidential business information.

11. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(A) because this is a civil action in which Defendant is an officer of the United States acting in his official capacity and resides in this judicial district.

**FACTUAL BACKGROUND**

**I.    Statutory and Regulatory Background**

12. This case arises at the intersection of two federal statutes: FOIA and TSCA.

13. FOIA imposes certain disclosure requirements on federal agencies; it generally requires government agencies to make records available to the public upon request. 5 U.S.C. § 552(a)(3)(A). However, agencies need not disclose records that fall within one of several exemptions. *See id.* § 552(b).

4

14. Crucially, "trade secrets and commercial or financial information obtained from a person and privileged or confidential" are exempt from the disclosure requirement. *Id.* § 522(b)(4). This exception for confidential business information is commonly referred to as FOIA Exemption 4, and it reflects Congress's understanding that the government has an important interest in "providing private parties with sufficient assurances about the treatment of their proprietary information so they will cooperate in federal programs and supply the government with information vital to its work." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 440 (2019).

15. Under TSCA, EPA is authorized to regulate the manufacture, processing, and distribution of chemical substances and mixtures that may be harmful to health or the environment. Congress revisited TSCA's scope in 2016 when it amended the statute pursuant to a set of revisions collectively known as the Lautenberg Amendments. *See* Frank R. Lautenberg Chemical Safety for the 21st Century Act, Pub. L. No. 114–182, 130 Stat. 448 (2016) (codified at 15 U.S.C. § 2601 *et seq.*). Among other things, the amended law protects confidential business information that is submitted to EPA as part of the agency's TSCA administration and enforcement.

16. When someone presents a FOIA request to EPA seeking to obtain information "that is reported to, or otherwise obtained by, the Administrator under" TSCA, and the request meets statutory requirements, a TSCA-specific set of procedures and protections kicks in. 15 U.S.C. § 2613(a).

17. In particular, Congress built into TSCA some protections that guard against unwarranted disclosure of confidential business information: EPA "shall not disclose information that is exempt" under FOIA Exemption 4, subject to narrow TSCA-specific

5


limitations. *Id.* Where applicable, those limitations narrow the scope of FOIA Exemption 4. *See id.* § 2613(b)(5).

18. Companies seeking to prevent disclosure of confidential information submitted under TSCA may do so by filing a "claim for protection" supporting their assertion that the information is confidential. *Id.* § 2613(c)(1)(A). The claim must substantiate that the business has (1) "taken reasonable measures to protect the confidentiality of the information"; (2) "determined that the information is not required to be disclosed or otherwise made available to the public under any other Federal law"; (3) "a reasonable basis to conclude that disclosure of the information is likely to cause substantial harm to the competitive position of the person"; and (4) "a reasonable basis to believe that the information is not readily discoverable through reverse engineering." *Id.* § 2613(c)(1)(B)(i)–(iv); *see* 40 C.F.R.§ 703.5(a).

19. EPA has further defined TSCA's confidential business information provisions by regulation. *See generally* 40 C.F.R. § 703. In general, a person submitting information under TSCA must assert any confidentiality claim "concurrent with submission of the information." *Id.* § 703.5.

20. When considering a request for information under FOIA, EPA "shall review a claim for protection" and require the claimant to "reassert and substantiate or resubstantiate the claim . . . as necessary to determine whether the information qualifies for an exemption from disclosure." 15 U.S.C. §§ 2613(f)(2), (A); *see* 40 C.F.R. § 703.8(c)–(d).

21. EPA must keep the information confidential if six factors are met: (1) The business asserted a valid claim of confidentiality; (2) the business "has taken reasonable measures to protect the confidentiality of the information"; (3) the information is not reasonably obtainable by other legitimate means; (4) there is "a reasonable basis to conclude that disclosure

of the information is likely to cause substantial harm" to the business's competitive position; (5) no other law denies confidential protection; and (6) the information falls within FOIA Exemption 4. 40 C.F.R. § 703.7(f); *see also id.* § 703.8(e).

22. EPA guidance recognizes that raw data qualifies as confidential business information. For example, EPA has indicated that "production volumes of chemicals . . . at a company facility" may be considered confidential business information subject to protection. EPA, *TSCA CBI Notice Questions and Answers* 2 (June 2023), https://perma.cc/9QE2-VK43.

23. If EPA denies a claim for protection in full or in part, it must provide notice, including the reasons for denial. 15 U.S.C. §§ 2613(g)(1)(B), (2)(A). EPA must then wait thirty days after the claimant receives notice before it can disclose any information claimed to be confidential. *Id.* § 2613(g)(2)(B); *see* 40 C.F.R. § 703.8(f) (establishing that the thirty-day period begins "on the next business day following the date the notice is made available to the submitter").

24. During the thirty-day stay, the claimant may seek judicial review of an adverse determination. *See* 15 U.S.C. § 2613(g)(2)(D)(i). If the claimant files a civil action to restrain disclosure in federal district court, EPA "shall not disclose" the information until the reviewing court resolves the litigation. *Id.* § 2613(g)(2)(D)(ii)(I). The confidential business information remains protected unless the court either "denie[s] the person's motion for a preliminary injunction," if one is brought, or "otherwise uph[olds] the EPA determination." 40 C.F.R. § 703.8(g).

## II. Inhance's Fluorination Process and Confidential Business Information

25. Founded in 1983, Inhance is a small company that primarily provides barrier protection and other surface fluorination technologies that transform customers' conventional plastic articles, like high-density polyethylene (HDPE) containers, into high-performance

7

materials, like packaging that allows for the transport of crop protection chemicals in commerce and fuel tanks for off-road equipment (e.g., lawnmowers, marine engines).

26. Fluorination performs an important function: It prevents the contents stored in plastic containers—like insecticides and gasoline—from being released into the environment through permeation of the container walls. Inhance's fluorination process operates according to specified time, pressure, and temperature parameters, and such operational details are proprietary. Since it discovered the inadvertent presence of PFAS impurities in its fluorinated articles several years ago, Inhance has devoted substantial resources toward researching, developing, and implementing proprietary process enhancements that reduce the potential for PFAS formation in fluorinated containers.

27. Beginning in 2020, EPA initiated an administrative proceeding to investigate Inhance's fluorination process under TSCA Section 5. Inhance submitted reams of confidential information to EPA as part of the agency's review, which culminated in two December 2023 unilateral orders mandating that Inhance shut down its fluorination business. Those orders were later vacated on judicial review by the United States Court of Appeals for the Fifth Circuit, which found that EPA had no statutory authority to regulate Inhance's fluorination process under Section 5. *Inhance Techs., L.L.C. v. EPA*, 96 F.4th 888 (5th Cir. 2024).

28. The information Inhance submitted to EPA as part of the Section 5 administrative review included sensitive business information regarding its process enhancements, research and development results and test data, and customer information. When Inhance submitted the information to EPA, it expressly designated the information as confidential business information, consistent with applicable EPA regulations. *See* 40 C.F.R. § 703.5.

### III.  The FOIA Dispute

29. While EPA's administrative review process unfolded, PEER submitted a FOIA request to EPA in January 2023.  That request sought a number of documents and information related to Inhance and its fluorination technology.  PEER's efforts were focused on discovering information about PFAS in containers fluorinated by Inhance, part of a broader public-relations and litigation campaign that PEER and CEH have been waging against the company for years.

30. A number of documents responsive to PEER and CEH's FOIA request were covered by Inhance's claims for confidential business information protection.  *See* 15 U.S.C. § 2613(c)(1).

31. While EPA continued to review the request, PEER and CEH sued the agency.  In a Complaint filed in this Court on February 15, 2024, PEER and CEH alleged that EPA was "wrongfully withholding requested agency documents" in violation of FOIA.  *Public Emps. for Env't Responsibility v. EPA*, No. 1:24-cv-000445 (JEB) (ECF No. 1) (Feb. 15, 2024).  In that lawsuit, which remains pending before Chief Judge Boasberg, PEER and CEH seek injunctive and declaratory relief ordering the release of Inhance's data and information.

32. EPA then issued a Notice of Review and requested that Inhance substantiate its confidential business information claims for the 262 documents that fell within the scope of the FOIA request.  EPA initially gave Inhance just fifteen days to substantiate its claims.  Due to the volume and size of the documents and the number of confidential-business-information claims in need of substantiation, Inhance requested an extension.  EPA partially granted Inhance's request and set a revised deadline of October 14, 2024.

33. Inhance timely responded in accordance with the October 14 deadline, providing both narrative substantiations and an index substantiating Inhance's claims of business confidentiality for each of the 262 documents identified in EPA's notice.  Of particular relevance

here are approximately 217 documents reflecting information related to Inhance's proprietary process—test data investigating the conditions under which PFAS impurities may form during Inhance's fluorination process. These records included reports and spreadsheets summarizing internal and third-party analytical results prepared in furtherance of Inhance's research and development program for its fluorination process. As Inhance explained to the agency, its analysis focused on samples of actual customer products and contains proprietary information "about the nature and types" of its customers' products.

34. In its response, Inhance explained that the data Inhance provided to EPA shows only the amount or concentrations of PFAS impurities (if present) in samples tested by Inhance as part of its proprietary research and development program. Notably, that information does not present information on the effect of PFAS on the environment or health and was not collected as part of any health or safety study. The information is properly characterized as confidential business information under FOIA Exemption 4, and nothing in TSCA requires its release.

35. Inhance also noted in its response that, following a more detailed confidentiality review, it could further narrow its claims on some of the documents and would provide updated redacted versions where possible. After working through various technical issues with EPA's document-submission platform, Inhance submitted 66 updated sanitized records that narrowed the scope of Inhance's original claims for protection.

**IV.  EPA Refuses to Protect Inhance's Confidential Business Information**

36. EPA issued a final confidentiality determination on February 28, 2025. The agency agreed that all information regarding process information, standard operating procedures for testing and sampling, and customer and customer-product information was entitled to confidentiality. However, EPA informed Inhance that it intended to release approximately 217 other records, in full or in part—most significantly test data, results, and conclusions generated

as part of Inhance's research and development program for enhancing its proprietary fluorination process, including test data related to levels of PFAS impurities that may form in the article during fluorination under a variety of different treatment parameters. These data were contained in analytical reports and spreadsheets, and summary information was included in certain tables of contents.

37. As the sole basis for its decision, EPA asserted that Inhance had not demonstrated a likelihood that disclosure would lead to substantial competitive harm. *See* 15 U.S.C. § 2613(c)(1)(B); 40 C.F.R. §§ 703.5, 703.7. In its view, the test results alone "do not provide insight into Inhance's research and development program," so they "would not provide valuable insight to competitors." EPA Response Ltr. at 5. For the same reason, EPA found that explanations and basic results from testing reflected in tables of contents were not entitled to confidentiality.

38. Additionally, EPA reasoned that because the agency had published the results of "similar testing of Inhance products," Inhance's own data "could not be used by competitors any more than existing publicly available test data." EPA Response Ltr. at 5.

39. EPA also denied Inhance's claims of confidentiality as to certain information that EPA asserted Inhance did not initially claim as confidential business information when it was submitted to EPA under TSCA. EPA's response stated that information contained in these three records had already been produced in response to PEER and CEH's FOIA request. EPA Response Ltr. at 6.

40. Inhance sought reconsideration at the agency. It requested that EPA reassess its determination or provide Inhance the opportunity to resubstantiate or bolster its substantiation of

11

claims regarding test-data confidentiality. Instead, EPA informed Inhance that it had no process for reconsideration and refused to accept any additional information or substantiation.

## V. EPA's Action Is Unlawful

41. Under the APA, a court "shall hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2).

42. EPA may not disclose "trade secrets" or "privileged or confidential" business information submitted to the agency. 5 U.S.C. § 552(b); 15 U.S.C. § 2613(a). Information is confidential within the meaning of FOIA Exemption 4 when it is "treated as private by its owner and provided to the government under an assurance of privacy." *Argus Leader Media*, 588 U.S. at 440.

43. When responding to FOIA requests for information submitted under the TSCA, EPA may require a business to "reassert and substantiate or resubstantiate" a claim for protection "to determine whether the information qualifies for an exemption from disclosure." 15 U.S.C. § 2613(f)(2). EPA may not release confidential information that has been substantiated in response to EPA's request. *See* 40 C.F.R. § 703.7(f) (stating that claims of confidentiality "will be approved" if the confidentiality criteria are satisfied). Substantiation requires, as relevant, "a reasonable basis" for concluding "that disclosure . . . is likely to cause substantial harm to the competitive position of the person." 15 U.S.C. § 2613(c)(1)(B)(iii); 40 C.F.R. § 703.7(f).

44. Inhance adequately substantiated its confidentiality designations. Specifically, the disputed materials included analytical reports and test data generated in furtherance of Inhance's research and development program. EPA Response Ltr. at 4. Access to this information would provide a competitive advantage to others in the marketplace seeking to develop their own competing technologies, causing significant harm to Inhance.

45. Over multiple years, Inhance has devoted substantial effort and made significant financial investment into research and development efforts targeted toward identifying and implementing enhancements to its fluorination processes to reduce the level of PFAS present in fluorinated containers. As part of that program, Inhance has been investigating the potential formation of PFAS impurities in Inhance's processes and testing the effectiveness of different process modifications. That analysis involves confidential testing of samples of customers' products, as well as Inhance's own samples. Inhance engages in this research and development in order to maintain its competitive advantage over competing barrier technologies.

46. Access to this testing information would allow competitors to glean useful information about Inhance's testing parameters and the degree to which Inhance has been able to reduce generation of PFAS. In light of the information's competitively sensitive nature, Inhance has closely held and maintained the confidentiality of its analytical data. *See Argus Leader Media*, 588 U.S. at 440 (explaining when information is "confidential" within the meaning of FOIA Exemption 4). Inhance's test data, results, and conclusions are electronically secured and shared internally by Inhance's Chief Executive Officer on a "need-to-know" basis. Only select members of the research and development team have access to the information. The information has not been publicly disclosed and is not otherwise available through public sources.

47. Inhance shared much of this sensitive information with EPA in response to the agency's Section 5 demands. While Inhance disputed that the agency had authority to initiate a Section 5 proceeding, EPA disagreed and opened one anyway. Under protest, Inhance provided the requested information with the expectation that the confidential information and test data would not be shared with the public.

48. Confidentiality also protects Inhance's customers, who provided samples of their products to Inhance for testing with the expectation that the information and data obtained would not be disclosed publicly.

49. EPA guidance recognizes that raw data qualifies as confidential business information. For example, EPA has indicated that "production volumes of chemicals . . . at a company facility" may be considered confidential business information subject to protection. *TSCA CBI Notice Questions and Answers* at 2 (June 2023).

50. Inhance's fluorination process is derived from concerted, multi-year research and development efforts and provides the company with a competitive commercial advantage. Details about its fluorination process and the testing performed to evaluate improvements to the process constitute trade secrets, disclosure of which would cause the company substantial competitive harm. *See Public Citizen Health Rsch. Grp. v. FDA*, 704 F.2d 1280, 1284 n.7 (D.C. Cir. 1983) (defining a trade secret as "a secret, commercially valuable plan, formula, process or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either renovation or substantial effort."); *see also Appleton v. FDA*, 451 F. Supp. 2d 129, 142 (D.D.C. 2006) (holding information on the manufacturing process and specifications for a drug were trade secrets).

51. For all of these reasons, Inhance's research conclusions are highly confidential, whether contained as data in spreadsheets or referenced in tables of contents. As Inhance explained to EPA, disclosure of test data and results prepared in furtherance of its research and development program would cause substantial harm to Inhance's competitive position. *See* 40 C.F.R. § 703.7(f); *see id.* § 703.8(e). Disclosure would allow other fluorination service providers to gain valuable insight into Inhance's methods and priorities for testing hypotheses regarding

the potential formation of PFAS impurities as well as the effectiveness of Inhance's process enhancements.

52. Moreover, such disclosure would put Inhance at a competitive disadvantage compared to competitors who offer other forms of barrier protection. The data may be used by competitors to tout differences in their own barrier process or products. *See, e.g.*, *National Parks & Conservation Assoc. v. Kleppe*, 547 F.2d 673, 684 (D.C. Cir. 1976) (finding competitive harm where "[d]isclosure would provide . . . valuable insight into the operational strengths and weaknesses" of a competitor).

53. Release of Inhance's proprietary information would allow competitors that provide barrier technology to improve their own processes, now that they have a known benchmark to target. Courts have consistently recognized that disclosure of this type of information represents core confidential business information and would cause harm to the disclosing party's business. *See, e.g.*, *United Techs. Corp. v. Department of Defense*, 601 F.3d 557 (D.C. Cir. 2010) (holding disclosure of details regarding company's manufacturing and quality control processes would cause competitive harm because, once disclosed, competitors could "use the information to improve their own manufacturing and quality control systems").

54. If Inhance's confidential business information is released, companies that provide competing barrier technologies will be motivated to refine their own manufacturing processes—using information that Inhance developed at its own expense—to reduce any unintentional formation of PFAS and compete with Inhance's technology.

55. To make matters worse, PEER and CEH have a long track record of disclosing (and distorting) information regarding Inhance's fluorination process in a way that has harmed—and will continue to harm—Inhance's business. For example, PEER and CEH used EPA

documents to craft a lawsuit they filed against Inhance in this Court several years ago, promising in that litigation to do more of the same: *Center for Environmental Health v. Inhance Technologies LLC*, No. 1:22-3819-JEB (ECF No. 12 ¶ 17) (D.D.C. Jan. 27, 2023) ("CEH will use the information submitted to EPA in SNUNs filed by Inhance, developed in EPA's review of the SNUNs, and obtained in this litigation to determine risks to human health that inform its advocacy for additional health protections and education of the public about the risks of PFAS formation during the fluorination process."); *see id.*¶ 29 (same as to PEER). When this Court dismissed that action in 2023, PEER and CEH intervened in a separate enforcement action in the Eastern District of Pennsylvania, where they "filed unauthorized motions for summary judgment before the close of pleadings (much less before the close of discovery)"; the court there, when it ultimately dismissed the case, observed that PEER and CEH's "astonishing filing included a 50-page brief, 45 pages of the most disputed-looking 'undisputed' material facts you'll ever see, and well over 1,000 pages of appendices." *United States v. Inhance Tech. LLC*, No. 5:22-cv-05055-JFM (ECF No. 103 n.1), (E.D. Pa. May 20, 2024). And just last year, PEER and CEH relied on information obtained from the now-vacated TSCA Section 5 proceedings against Inhance to file a new lawsuit against EPA under TSCA Sections 6 and 7, arguing that the perfluorooctanoic acid (PFOA) "formed during [Inhance's] fluorination process" is "not only significant and serious but widespread." *Center for Environmental Health v. Regan*, No. 1:24-cv-2194-JEB (ECF No. 1 ¶ 99).

56. At a minimum, Inhance has provided "a reasonable basis" to conclude that disclosure of the information would likely cause substantial harm to Inhance's competitive position. 15 U.S.C. § 2613(c)(1)(B)(i)–(iv); *see* 40 C.F.R.§ 703.5(a). Inhance articulated several

16

reasons for why disclosure of its sensitive data would be likely to cause substantial harm to its competitive position.

57. For all of these reasons, Inhance will be injured if its confidential information is released by EPA. An order from this Court directing EPA to maintain Inhance's information as confidential would redress those injuries. However, whether the release of this information would "cause substantial harm to the competitive position of the submitter" is *not* a required element to determine whether the information meets Exemption 4. *Argus Leader Media*, 588 U.S. at 436. Instead, "where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy, the information is 'confidential' within the meaning of Exemption 4" and therefore qualifies for protection under FOIA. *Id.* at 440. That is assuredly the case here, and Inhance's confidential business information should be treated accordingly.

58. In denying confidential protections to Inhance's confidential information, EPA violated its own governing statute and regulations. The agency erroneously determined that Inhance's proprietary research and development data, results, and conclusions were not entitled to confidentiality based only on finding that there was *no reasonable basis* for concluding that disclosure of Inhance's information was likely to cause substantial competitive harm. While Inhance strenuously disagrees with EPA's conclusion, EPA's finding failed to apply the standard set forth in FOIA Exemption 4, TSCA, and EPA's regulations, which provide that EPA protect from disclosure information that contains any trade secrets or commercial or financial information that is confidential or privileged.

59. PEER and CEH (although notably not EPA) have taken the view that the withheld information may constitute health and safety studies, which are governed by 15 U.S.C.

§ 2613(b)(2). But the meaning of "health and safety studies" under the statute has a limited reach, as recent D.C. Circuit precedent establishes. When Congress decided in favor of releasing "health and safety studies," it adopted a statutory term that "refers only to the evaluation of a chemical's health and environmental effects, not the entire document containing that evaluation." *Environmental Def. Fund v. EPA*, 124 F.4th 1, 11 (D.C. Cir. 2024); *see also id.* ("Information that is not part of an evaluation of a chemical's effects or that does not form the basis of that evaluation is not part of a health and safety study."). This "limited definition" of a health and safety study thus "allows the public to access data and analysis regarding a chemical's effects, while protecting other sensitive information that happens to be in the study document." *Id.* at 12.

60. In other words, research data and results that do not evaluate health and environmental effects fall outside of the definition of "health and safety" under the statute. That data and information is entitled to confidentiality, provided the information falls within the bounds of FOIA Exemption 4 and the business submitting the information satisfies certain procedural requirements. See 15 U.S.C. § 2613(a), (c).

61. For all of these reasons, EPA's decision to disclose Inhance's confidential information was arbitrary, capricious, and contrary to law.

### COUNT I
### (Administrative Procedure Act, 5 U.S.C. §§ 700, *et seq.*)

62. Inhance realleges, reasserts, and incorporates by reference herein each of the foregoing allegations as though set forth fully herein.

63. EPA's failure to adhere to its governing statute and regulations is unlawful.

64. EPA's final confidentiality determination and decision to disclose Inhance's research and development data is final agency action reviewable under 5 U.S.C. § 704 and 15

18

U.S.C. § 14(g)(2)(D).  Inhance has responded to all EPA requests to substantiate confidentiality, including by providing meticulous written justifications to support its claims for protection from disclosure, and has exhausted all available administrative remedies.

65. Under FOIA, confidential business information is exempt from disclosure in response to third-party requests for records.  5 U.S.C. § 552(b)(4).  TSCA also guarantees that confidential business information within the meaning of FOIA Exemption 4 will not be disclosed, as long as the claimant has satisfied TSCA's requirements for substantiation.  15 U.S.C. § 2613(a).

66. Inhance's research and development data, findings, and conclusions are exempt within the meaning of FOIA Exemption 4 and satisfy all requirements for protection from disclosure under TSCA.

67. EPA acted arbitrarily and capriciously and contrary to law when it found that there was *no reasonable basis* to conclude that disclosure of Inhance's sensitive and confidential data obtained through its research and development program would cause substantial harm to its competitive position.  Accordingly, EPA's decision to release Inhance's information violates the APA.  5 U.S.C. § 706.

## PRAYER FOR RELIEF

For the foregoing reasons, Inhance prays for the following relief:

A. A declaration pursuant to 28 U.S.C. § 2201 that Inhance's confidential business information—including test data investigating the conditions under which PFAS impurities may form during Inhance's fluorination process, as well as reports, spreadsheets, and other records containing its confidential research and development data, findings, and conclusions—is exempt from disclosure under 5 U.S.C. § 552(b) and 15 U.S.C. § 2613(a);

19

B.      A declaration that Inhance's research and development data, findings, and conclusions contain confidential information that, if released by EPA, would cause Inhance substantial competitive harm;

C.      A declaration that EPA's decision to release its research and development data, findings, and conclusions is unlawful, arbitrary, and capricious;

D.      Injunctive relief preventing EPA from publicly releasing or disclosing the information in question;

E.      An order awarding Inhance its costs, expenses, and attorneys' fees incurred in these proceedings pursuant to 28 U.S.C. § 2412; and

F.      Such other and further relief as the Court deems proper.

Dated: April 2, 2025

Respectfully submitted,

/s/ *Susan M. Cook*
Susan M. Cook (D.C. Bar No. 462978)
Adam Kushner (D.C. Bar No. 426344)
Marlan Golden (D.C. Bar No. 1673073)
Jacob T. Young (D.C. Bar. No. 90014334)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
Phone: (202) 637-5600
Fax: (202) 637-5910
susan.cook@hoganlovells.com

J. Tom Boer (D.C. Bar. No. 469585)
HOGAN LOVELLS US LLP
4 Embarcadero Center, Suite 3500
San Francisco, CA 94111
Phone: (415) 374-2336
Fax: (415) 374-2499
tom.boer@hoganlovells.com

*Counsel for Inhance Technologies LLC*